**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOEL ORTNER,<br><br>      Plaintiff,<br><br>   v.<br><br>EQUIFAX INFORMATION SERVICES, Inc., *et al.*,<br><br>      Defendants. | Civil Action No. 21-2219 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Rushmore Loan Management Services, LLC's ("Rushmore") Motion to Dismiss Plaintiff Joel Ortner's ("Ortner") Complaint. (ECF No. 25.) Ortner opposed (ECF No. 31), and Rushmore did not reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court denies Rushmore's Motion to Dismiss.

**I.   BACKGROUND**

This action arises out of alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* "On information and belief," Ortner claims that Defendant Equifax Information Services, LLC ("Equifax") prepared and issued credit reports concerning Ortner that included inaccurately reported and materially misleading information relating to his account with Rushmore. (Compl. ¶ 26, ECF No. 1.) Ortner claims that Rushmore furnished information to Equifax that misleadingly reported a current account status that is "over 120 days past due" despite the trade line currently reflecting a $0 balance. (*Id.* ¶¶ 27-29; Ortner Decl. ¶ 7, ECF No. 39.) Ortner

avers that because Equifax reported the account in this fashion, lenders believed that Ortner was late on this account, as of the date of the report, "negatively reflecting [Ortner's] credit worthiness by impacting [his] credit score[.]" (Compl. ¶ 30.) Ortner claims that Equifax notified Rushmore of Ortner's dispute, but Rushmore failed to subsequently conduct a reasonable investigation into the report. (*Id.* ¶¶ 33-34.) Moreover, Ortner claims that Rushmore continued to furnish the alleged inaccurate and materially misleading information that Equifax conveys on Ortner's credit report. (*Id.* ¶ 40.) Because Rushmore failed to comply with the FCRA, Ortner alleges that he suffered damage through loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, mental and emotional pain, and embarrassment from credit denial. (*Id.* ¶ 41.)

On February 10, 2021, Ortner sued Equifax, Rushmore, and Wells Fargo Bank, N.A., d/b/a Wells Fargo Home Mortgage for alleged violations under the FCRA. Later, Ortner filed Notices of Settlement as to Equifax and Wells Fargo. (ECF Nos. 22, 32.) As to the remaining causes of action against Rushmore, Ortner alleges both willful and negligent violations of the FCRA. Rushmore now moves to dismiss for lack of standing and failure to state a claim. (*See generally* Def.'s Moving Br., ECF No. 25.)

**II.   LEGAL STANDARD**

    **A.   Rule 12(b)(1)[1]**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Since subject matter jurisdiction is a threshold requirement for consideration of the sufficiency of the underlying claims, the Court's analysis begins there." *Frame v. Lowe*, No. 09-2673, 2010 WL 503024, at *5 (D.N.J. Feb. 8, 2010).

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Article III of the United States Constitution limits the judicial power of federal courts to "the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982). Thus, federal courts may only "adjudge the legal rights of litigants in actual controversies." *Id.* (citations omitted). To determine whether there is an actual case and controversy before the Court and "to ensure that federal courts do not exceed their authority[,]" courts look to the doctrine of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).

The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338 (citations omitted.) Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citations omitted). In the pleading stage, as is the case here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (citations omitted).

**B.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

3

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.  DISCUSSION

Rushmore moves to dismiss on two grounds. First, Rushmore argues that Ortner failed to establish Article III standing. (Def.'s Moving Br. *2.)[2] Second, Rushmore argues that Ortner failed to state a claim or adequately allege damages. (*Id.* at *3-4.) Because standing is a threshold issue, the Court must first address the issue of standing. Next, the Court will address the FCRA claims.

### A.  Ortner Has Standing to Sue Under the FCRA.

Article III of the Constitution requires that plaintiffs have standing to assert their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At issue here is the threshold question of whether Ortner has suffered an injury-in-fact. *Id.* To show injury-in-fact, Ortner must

---

[2] Because Defendant's brief does not contain page numbers, the Court references the page numbers at the top of the ECF filing.

4

demonstrate that he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not just conjectural or hypothetical.'" *Id.* (citations omitted.) The particularity element of injury-in-fact requires Ortner to demonstrate that he is "affected in a personal and individual way." *Id.* at 560 n.1. The concrete element requires that the injury be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340. "Concrete" is not the same as "tangible," however. *Id.* The Supreme Court counsels that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. For that reason, Ortner cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

The Supreme Court recently illustrated these requirements. In *TransUnion LLC v. Ramirez*, the Court further elaborated that concrete injuries must be something more than mere statutory violations. 141 S. Ct. 2190, 2204-05 (2021) (reasoning that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is" (citation omitted)). In short, "an injury in law is not an injury in fact." *Id.* at 2205. The upshot of *TransUnion* is that courts must engage in a two-part inquiry when assessing statutory injuries: "first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law." *Rohl v. Prof. Fin. Co., Inc.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022).

Applying that reasoning here, the Court addresses whether Ortner has standing. At bottom, Ortner complains that Rushmore "failed to conduct a reasonable investigation that should have uncovered, to the reasonable creditor's eye, that continuing to report a 120-day delinquency on an account that had been closed with a $0 balance was inaccurate and materially misleading." (Pl.'s Opp'n Br. 21, ECF No. 31.) Ortner asserts that Rushmore's actions (or lack thereof) are analogous

to the common law tort of "defamation" and "publicity that unreasonably places the other in a false light before the public." (*Id.* at 9, 10.) The Court agrees.[3] "To plead a *prima facie* case of defamation under New Jersey law, 'a plaintiff must establish (1) the assertion of a false and defamatory statement concerning the plaintiff, (2) the unprivileged publication of that statement to a third party, (3) fault amounting to at least negligence by the publisher, and (4) damages.'" *Sciore v. Phung*, No. 19-13775, 2022 WL 950261, at *5 (D.N.J. Mar. 30, 2022) (citing *Robles v. U.S. Env't. Universal Serv., Inc.*, 469 F. App'x 104, 109 (3d Cir. 2012)). "The purpose underlying defamation law is to compensate an individual for pecuniary harm to one's reputation inflicted by a defamatory statement." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 471 (E.D. Pa. 2010) (citing *Wilson v. Slatalla*, 970 F. Supp. 405, 414 (E.D. Pa. 1997)).

Here, Ortner's alleged injury as a result of Rushmore's conduct is suitably analogous to the reputational harm that defamation seeks to redress. *See Barclift v. Keystone Credit Servs., LLC*, No. 21-4335, 2022 WL 444267, at *8 (E.D. Pa. Feb. 14, 2022) (explaining that plaintiff's alleged injury must bear a close relationship to the type of harm that follows from a common law tort, but need not be a perfect match). Ortner's assertion that Rushmore misleadingly reported Ortner's credit information to Ortner's detriment appropriately aligns with the core purpose of a defamation claim. (Compl. ¶ 40.) Much like how an individual's interest in his or her reputation is protected by defamation at common law, the FCRA uses expansive language to protect consumers from the "adverse effects of unfair or inaccurate credit reporting." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 62 (2007); *see* 15 U.S.C. § 1681 (asserting that inaccurate credit reports and unfair credit reporting methods undermine public confidence and reporting agencies need to exercise their

---

[3] As the Court finds that Ortner's alleged injury is analogous to defamation, it does not need to address the proposition with respect to false light. *See Frame*, 2010 WL 503024, at *5 (explaining that standing is a threshold inquiry and once that threshold is satisfied the inquiry need not go further).

6

grave responsibilities fairly, impartially, and with respect for privacy). In short, the FCRA protects credit related reputational harms because, as the Seventh Circuit explains, "being portrayed as a deadbeat who does not pay [his or her] debts has real-world consequences." *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1154 (7th Cir. 2022). Therefore, as Ortner's allegations of reputational injury through the FCRA are analogous to those historically redressed by a defamation claim, the Court finds that Ortner has successfully demonstrated that his claim bears a close relationship to a traditionally recognized harm.

Correspondingly, the Court moves to the second part of its standing inquiry and finds that Ortner's injury is not simply a statutory one. Examining the injury, Ortner alleges he "suffered . . . loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." (Compl. ¶ 41.) These allegations in the complaint go beyond mere injury in law and are sufficient for the Court to find standing. *Boone v. T-Mobile USA Inc.*, No. 17-378, 2018 WL 588927, at *9 (D.N.J. Jan. 29, 2018) ("*Spokeo* provides that a 'bare procedural violation' of the FCRA does not satisfy the injury-in-fact requirement. However, a depleted credit score is more than that." (citation omitted)). The Court, therefore, finds that Ortner has standing in this action.

**B.     Ortner Adequately Pleads an FCRA Violation.**

Rushmore argues that the account in this matter was accurately reported and verified as closed with a $0 balance and with a historical pay status of over 120 days past due at the time the account was closed. (Def.'s Moving Br. 9.) According to Rushmore, "[Ortner] fails to allege, and it can thereby be inferred he admits, that the loan was in fact 120 days or more past due when it was closed." (*Id.*) Rushmore also argues that the Court must ignore Ortner's argument that a creditor could be misled into believing that the account is currently over 120 days late because Ortner admits that the account is reporting as closed with a $0 balance. (*Id.* at 10.) Instead,

7

Rushmore contends that the Court should look at the account in its entirety, rather than isolated fields, to determine whether the account is materially misleading. (*Id.* at 11.) Rushmore also argues that "[e]ven if Plaintiff could support his allegations that Rushmore's reporting to Equifax was inaccurate or was materially misleading . . . Plaintiff's FCRA claims fail for the separate independent reason that he has failed to and cannot plead . . . actual harm resulting from Rushmore's alleged actions or inactions." (*Id.* at 15.)

Ortner counters that he has alleged a plausible violation under the FCRA because "Defendant Rushmore failed to conduct a reasonable investigation that should have uncovered, to the reasonable creditor's eye, that continuing to report a 120-day delinquency on an account that had been closed with a $0 balance was inaccurate and materially misleading." (Pl.'s Opp'n Br. 21.) Ortner also contends that, contrary to Rushmore's claims, "nowhere in those allegations is there an indication . . . that the delinquency notation is merely historical." (*Id.* at 22.) Ortner further claims that Rushmore's argument that the credit report as a whole indicates the account status is merely historical fails because "the credit report is missing from [Rushmore's] attack." (*Id.* at 23.) Finally, Ortner avers that damages exist in the form of "loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." (*Id.* at 30.) The Court thus addresses the parties' contentions below.

"The FCRA is intended 'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). Under the FCRA, credit reporting agencies ("CRAs") "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into

individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014). The FCRA "imposes a variety of obligations on both furnishers and CRAs." *Id.* First, the furnisher of information has a duty to provide accurate information to the credit reporting agency. 15 U.S.C. § 1681s-2(a). Second, a furnisher "is required to undertake an investigation once that [furnisher] receives notice from a [CRA] that a consumer has disputed the accuracy of information provided by that [furnisher] to that [CRA]." *Schoenhaar v. PHH Corp.*, No. 12-2049, 2012 WL 6021521, at *3 (D.N.J. Dec. 3, 2012) (citing 15 U.S.C. § 1681s-2(b)). "[I]f the investigation finds that the information is incomplete or inaccurate, [the furnisher must] report those results to all other consumer reporting agencies to which the person furnished the information . . . ." 15 U.S.C. § 1681s-2(b)(1)(D).

Thus, to state a claim under § 1681s-2(b), plaintiffs must plead that: (1) they "sent notice of disputed information to a consumer reporting agency," (2) "the consumer reporting agency then notified the defendant furnisher of the dispute," and (3) "the furnisher failed to investigate and modify the inaccurate information." *Cheadle v. Experian*, No. 20-18183, 2021 WL 3144843, at *3 (D.N.J. July 26, 2021) (internal citation omitted); *see also SimmsParris*, 652 F.3d at 358. "[F]actually incorrect information is 'inaccurate' for purposes of the FCRA" and "technically correct" information "may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.'" *Seamans*, 744 F.3d at 865 (alteration in original) (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)). Here, the parties do not dispute that Ortner notified Equifax of the alleged inaccuracy, or that Equifax notified Rushmore of Ortner's dispute. The Court, therefore, considers only prong three.

The Court finds that Ortner states a plausible claim for relief. Rushmore argues that "[Ortner] must demonstrate that the information reported by Rushmore was inaccurate." (Def.'s

Moving Br. *9.) But Ortner submitted the credit report for the Court's review. (Ortner Decl. Ex. A at *1, ECF No. 39-1.) On that report, the account status is reported as "OVER_120_DAYS_PAST_DUE." (*Id.*) But directly below that, a review of the payment history indicates that the account was only 120 days past due in July 2016. (*Id.*) Thus, on the Court's review, Ortner adequately alleges that the reporting of the account with a 120-day late payment notation, when the account is closed with a $0 balance, is misleading. (Pl.'s Opp'n Br. 21.)

Courts, moreover, have similarly found plausible FCRA claims where a plaintiff paid off the balance of an account in full at closure but the account continued to report it as past due. In *Carey-Laylor v. Equifax Info. Services, LLC*, plaintiff paid off an auto loan in full but defendant reported the loan "as closed with a $0 balance" and as "having a past due status." No. 21-16953, 2022 WL 1442151, at *1 (D.N.J. May 6, 2022). In finding that the plaintiff plausibly alleged facts to support an FCRA claim, the Court concluded that "a reasonable creditor may or may not discern that the account was paid in full by the borrower." *Id.* at *5. Likewise, in *Smith v. Trans Union, LLC*, the plaintiff paid off an auto loan and closed the account, but the defendant continued to "report [the p]laintiff's Wells Fargo account as 'Pay Status: Account 60 Days Past Due Date.'" No. 20-4903, 2021 WL 1061213, at *1, 3 (E.D. Pa. Mar. 19, 2021). Ultimately, the Court reasoned that the pay status showing a late payment "would lead one to believe the account was past due and continued to be past due, or not fully paid, when the balance was zeroed out when it was closed." *Id.* at 3. At bottom, courts regularly decline to dismiss FCRA claims like the one at issue here. *See Barrow v. TransUnion, LLC*, No. 20-3628, 2021 WL 1424681, at *5-6 n.5 (E.D. Pa. Apr. 13, 2021) (declining to dismiss plaintiffs' claims where they paid an account balance in full but the payment status continued to reflect late payment, because "several different, plausible meanings . . . may be ascribed to these remarks from the perspectives of a typical, reasonable reader and a typical, reasonable creditor"); *Gatanas v. Am. Honda Fin. Corp.*, No. 20-7788 2020

10

WL 7137854, at *1, *4 (D.N.J. Dec. 7, 2020) (denying motion to dismiss because "more factual development and exploration" was needed to determine whether an account that was paid off and closed but included a late payment notation was misleading).

So too here. At this stage, the Court finds that Ortner has plausibly stated a claim for relief. The facts, as pled, may reasonably support Ortner's claim that the report is inaccurate and, even if it is not, that it "create[s] a materially misleading impression." *Seamans*, 744 F.3d at 865 (citation omitted). The Court, accordingly, finds that Ortner states a claim for relief.[4]

### IV.  CONCLUSION

For the reasons set forth above, the Court denies Rushmore's Motion to Dismiss. An appropriate order will follow.

/s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

---

[4] Finally, Rushmore argues that Ortner has not alleged facts supporting the contention that Ortner suffered any harm as a result of Rushmore's furnishing of information on the account. (Def.'s Moving Br. *16.) The Court disagrees. Under the FCRA, a plaintiff may recover "any actual damages [he] sustain[s] . . . as a result of" a negligent violation of the FCRA. 15 U.S.C. § 1681o. A plaintiff also may recover punitive damages if the defendant willfully violates the statute. 15 U.S.C. § 1681n. In the Complaint, Ortner states he has suffered "damage[s] for the loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials." (Compl. ¶ 25.) The Court, therefore, cannot find that Ortner has not alleged actual damages under the FCRA as a matter of law. The motion to dismiss, therefore, is denied.